UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | |
|---|---|
| ELLA J. FAUSZ, individually, and on behalf of a class of similarly situated persons,<br><br>   Plaintiffs,<br> v.<br><br>NPAS, INC.<br><br>   Defendant. | Cause No. 3:15-cv-00145-CRS-DW |

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

Plaintiff, Ella J. Fausz, by counsel, individually and on behalf of the putative class of similarly-situated persons, for her memorandum in opposition to the motion for summary judgment made by Defendant NPAS, Inc. ("***NPAS***"), states as follows:

I. S<small>UMMARY OF THE</small> A<small>RGUMENT</small>.

The Court must deny NPAS' motion for summary judgment for four reasons. First, NPAS was a "debt collector" under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("***FDCPA***"), regarding the 895-day old medical debt it sought to collect. After over two and a half years of failed collection efforts, the 2011 debt was in "default" when placed with NPAS in February 2014. Second, NPAS' motion for summary judgment is premature because discovery is incomplete. The parties are presently engaged in a discovery dispute over NPAS' failure to make discovery, including providing complete account records, which discovery is

1

pertinent to the issues raised in its motion, including that of default and its *bona fide* error defense. Third, Ms. Fausz suffered an injury-in-fact sufficient to meet the Article III standing requirement under the United States Constitution. *See Church v. Accretive Health, Inc.,* 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016). Fourth, NPAS cannot rely on a *bona fide* error defense because it admitted it does not comply with the FDCPA and presented no evidence that its violations of the FDCPA were unintentional or that it maintained reasonable procedures to avoid violations of the FDCPA. Further, the defense is inapplicable to its mistaken interpretation of the law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).

II.   STATEMENT OF MATERIAL FACTS.

Defendant NPAS is a licensed collection agency that collects medical debt on behalf of clients, mostly hospitals. (Depo. Steadmon 31:3-6; 33:6-18, Ex. A). NPAS operates a call center in Louisville, Kentucky and one in Texas. (Depo. Summers 110:23-111:2, Ex. B). For its services, NPAS charges a percentage of monies recovered. (Depo. Summers 33:12-13).

On August 16, 2011, Ms. Fausz presented to the emergency room at Springfield Regional Medical Center in Springfield, Ohio (the "***Hospital***") for injuries suffered in an automobile accident. For this visit, she incurred a medical bill of $3,515.50. (Itemized Charges, Ex. C). Under the Hospital's agreement with Ms. Fausz, Ms. Fausz assigned insurance benefits to the Hospital and agreed to pay any outstanding balance on demand. (Patient Agreement, Ex. D).

The Hospital's collection process has several steps. Initially, the Hospital seeks reimbursement from third-party payors, such as insurance companies and Medicaid, and uses various vendors to locate these sources. If these payment sources are not discovered or if the payments received are insufficient to cover the outstanding bill, the Hospital sends an account

2

statement to the patient demanding payment on receipt. If payment is not forthcoming, the Hospital sends a second statement within about 30 days. If payment is still not received, and if the Hospital deems the account uncollectible, the Hospital may refer the account to a third-party collection agency. (Depo. Michelle Napier 41:25 to 41:16, Ex. E).

According to its accounting policy, the Hospital writes off all accounts after 360 days from the date of service. The Hospital considers these accounts "uncollectible." (Aff. Travis Crum, Ex. F). The Hospital avoids using the term "in default" to describe an uncollectible account. (Depo. Napier 18:22-23; 71:20)("We don't use the word default."). Thus, according to the Hospital, accounts are "aged" and eventually written off the books based on their age, but the accounts are never considered in default.

Consistent with its collection and accounting policies, on or about August 24, 2011, the Hospital submitted Ms. Fausz's medical bill to Cincinnati Insurance Company, the automobile insurance carrier responsible for paying "no fault" medical benefits. (Itemized Charges, Ex. C). For reasons unknown, Cincinnati Insurance did not immediately pay the bill.[1]

Thereafter, the Hospital hired Medical Reimbursements of America ("*MRA*") to track down potential payments sources. On September 1, 2011, MRA sent a letter to Ms. Fausz's attorney, on behalf of the Hospital, seeking payment of the debt. (9/1/2011 MRA Letter, Ex. H). On November 15, 2011, MRA sent a second letter to Ms. Fausz's attorney. (11/15/2011 MRA Letter, Ex. I). On April 12, 2012, MRA sent a third letter to Ms. Fausz's attorney. (4/12/2012 MRA Letter, Ex. J).

---

[1] The insurance carrier eventually paid the bill on January 25, 2015. (01/25/2015 Letter from Cincinnati Insurance, Ex. L).

Having not received payment, the Hospital made multiple phone calls to Ms. Fausz seeking payment of the debt, "to the point of harassment." (Depo. Fausz 22:14, Ex. K). On May 22, 2012, the Hospital mailed Ms. Fausz a statement. (5/22/2012 Hospital Statement, Ex. M). In the May 2012 statement, the Hospital demanded that Ms. Fausz pay $3,515.50 and advised that the balance was due "on receipt." Ms. Fausz did not pay the balance. On June 12, 2012, the Hospital sent a second statement, advising Ms. Fausz that the balance was "PAST DUE." (06/12/2012 Hospital Statement, Ex. N).

Then, on July 5, 2012, the Hospital contracted MedPay Assurance to send a letter to collect the debt. (7/5/2012 Letter from MedPay, Ex. O). On August 2, 2012, NPAS also sent a letter to Ms. Fausz seeking to collect the debt. (8/2/2012 NPAS letter, Ex. P).

By December 31, 2012, the account having aged more than 360 days, Hospital recorded in its books that it expected $0 in estimated revenue on the debt. (Mercy A/R Aging Schedule Entry, Ex. Q).

On or around February, 2013, the Hospital referred the debt to United Collection Bureau, Inc., a debt collector, for collection. On February 11, 2013, UCB sent Ms. Fausz a dunning letter. (2/11/2013 Letter from UCB, Ex. R). In this letter, UCB identified itself as a "debt collector."

On January 27, 2014, the Hospital placed the account with NPAS for collection. (Def.s' Responses to Interrogatory 5, Ex. S). On February 11, 2014, NPAS sent a letter to Ms. Fausz seeking to collect the debt, which letter is the subject of this action. (2/11/2014 Letter, Ex. T). In the letter, NPAS did not provide information about the debt or Ms. Fausz's rights regarding the debt, as required by the FDCPA, 15 U.S.C. 1692g(a). Nor did NPAS disclose in the letter that it

was a debt collector and that any information obtained could be used for that purpose, a requirement of § 1692e(11).

On February 11, 2015, Ms. Fausz brought this putative class action against NPAS under the FDCPA, alleging that NPAS' failure to provide debt collection validation notices in its dunning letters violates 15 U.S.C. § 1692g(a) and its failure to include mini-Miranda warnings violates 15 U.S.C. § 1692e(11).

In its motion for summary judgment, NPAS argues it is not a "debt collector" subject to the FDCPA because the debts it collects are not in "default." Additionally, NPAS contends that Ms. Fausz lacks standing to assert her claims under Article III of the United States Constitution.

III. ARGUMENT.

Under the facts, NPAS is a "debt collector" as defined by the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6). With respect to a debt, a person may be either a "creditor" or a "debt collector," but cannot be both. *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012). Thus, a servicer of a current debt is a creditor, but a servicer of a defaulted debt is a "debt collector" under the Act. *See Ruth v. Triumph P'ships*, 577 F.3d 790 (7th Cir. 2009); 15 U.S.C. § 1692a(6)(F)(iii). Because NPAS obtained Ms. Fausz's account when it was in default, it is a debt collector.

### A. NPAS cannot satisfy the Rule 56 Summary Judgment Standard.

NPAS' motion fails the summary judgment standard under the federal rules of civil procedure. Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. F.R.C.P. 56. "In considering a motion for

summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party." *Kistner v. The Law Offices of Michael P. Margelefsky*, LLC, 518 F.3d 433 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

**B. Ms. Fausz has presented sufficient evidence that her account was "in default" to create a genuine issue of material fact.**

The provisions of the FDCPA apply only to "debt collectors." Under the Act, a debt collector is:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Excluded from the definition is a person who collects a debt "which was not *in default* at the time it was obtained by such person." *Id.* (emphasis added). Unfortunately, Congress did not define "default." *Magee v. Allianceone, LTD.*, 487 F. Supp.2d 1024 (S.D. Ind. 2007).

*i. The Court should adopt the dictionary definition of default.*

The Court should adopt the dictionary definition of default in interpreting 15 U.S.C. § 1692a(6). The dictionary offers a neutral, clear, and predictable method of determining when a debt is in default. According to Black's Law Dictionary, the definition of default is "the omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." (8th Ed.).

6

Although the issue has not arisen, the Sixth Circuit likely would subscribe to the dictionary definition approach in interpreting "default" as used in the FDCPA. In *Appoloni v. United States*, 450 F.3d 185, 199 (6th Cir. 2006), a tax case, the Court wrote that in the absence of a statutory definition, "courts may refer to dictionary definitions for guidance in discerning the plain meaning of a statute's language." In another published decision, the Sixth Court of Appeals explained that it would enforce the FDCPA according to its plain language. *Frey v. Gangwish*, 970 F.2d 1516, 1520 (6th Cir. 1992). Furthermore, in *Bridge v. Ocwen*, 681 F.3d 355 (6th Cir. 2012), the Court of Appeals barred a debt collector from unilaterally defining default to evade the law.

Applying the dictionary's definition of default to this case, Ms. Fausz defaulted on the debt in July 2012 when she failed to pay her medical debt when due, i.e., when she failed to pay the bill after the Hospital demanded payment in its May 22, 2012 statement. Thus, when NPAS obtained the account in January 2014, the debt was in default.

      ii.    *Even if the Court rejects the dictionary definition, the account was in default under other recognized theories.*

Courts across the nation have used other approaches in defining default. Some courts look to the agreement creating the debt for the definition of default. *Prince v. NCO Financial Services*, 346 F. Supp 2d 744 (E.D. Pa. 2004). Here, the patient agreement is not conducive to such an analysis because the agreement does not define default.

Other courts reject the parties' definition of default in favor of the dictionary's definition. *Magee v. AllianceOne, LTD.*, 487 F. Supp.2d 1024 (S.D. Ind. 2007). In *Magee*, the district court for the Southern District of Indiana found that using Black Law's definition of default would be more in line with the FDCPA's remedial purposes. *Id.* at 1029. There, the court wrote:

> The express purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors.' 15 U.S.C. §1692(c). This purpose would be contravened if a creditor were unilaterally able to determine when and if an account was in default for FDCPA purposes and therefore whether the provisions of the FDCPA applied to the debt collection practices of the collection agency it hires.

(*Id*.).

At least one court used the creditor's reasonable written guidelines to define default. *Prince v. NCO Financial Services*, 346 F. Supp 2d 744 (E.D. Pa. 2004). In this case, the Hospital deemed accounts "uncollectible" after 360 days from the date of service, according to its written accounting policy. (Aff. Travis Crum). Although the Hospital never uses the term "default" to describe the status of uncollectible or past due accounts, it nevertheless writes off delinquent debt after 360 days. Here, Ms. Fausz's account was 895 days old when placed with NPAS for collection. Because of its age at the time of placement with NPAS, the account was deemed "uncollectible" according to the Hospital's written policies. Thus, NPAS was a debt collector with respect to the account under this approach.

Courts also look at how the debt collectors treat the debt at the time of acquisition. In *Bridge v. Ocwen*, 681 F.3d 355 (6th Cir. 2012), a debt collector argued it was exempt from the FDCPA because it was a "loan servicer" and the debt was not in default. The Sixth Circuit rejected this proposition, citing that the debt collector had claimed the loan was overdue in its pre-litigation dunning letters. *Id*. Here, in its letter to Ms. Fausz, NPAS wrote: "Our records reflect you were previously contacted regarding the unpaid balance in the amount shown above." When asked about the prior contacts in deposition, NPAS' representative testified that the prior contact was the Hospital's account statements. (Depo. Summers 115:5-15).

Finally, at least one court relied on a prior servicer's characterization of the debt to ascertain the account status. In *Alibrandi*, a creditor initially placed a debt with a servicer which sent a dunning letter in which the creditor self-identified as a debt collector and provided a validation notice under 15 U.C.S. § 1692g(a). The debt was later transferred to another servicer, which did not comply with the FDCPA. The second servicer unsuccessfully argued that the debt was not in default when placed. The Court disagreed, reasoning that: "If [the creditor] hired [the initial debt servicer] to pursue [the defendant's] debt, the [initial debt servicer's] self identification as a debt collector constituted a declaration by [the creditor] that [the defendant's] debt was in default." *Id*. at 87-88. Here, prior to placement with NPAS, the debt was serviced by Unified Collection Bureau, a debt collector. Like the debt collector in *Alibrandi*, United Collection Bureau identified itself as a debt collector and provided FDCPA validation and mini-Miranda warnings. Thus, through the declaration of its agent, the Hospital deemed the debt in default when it placed it with NPAS.

   iii.  *NPAS may not rely on its servicing agreement to evade the FDCPA.*

NPAS contends its agreement with the Hospital prevents it from being a "debt collector" under the FDCPA. The argument fails. A debt collector may not use its engagement agreement to define itself out of the FDCPA. *Alibrandi v. Financial Outsourcing Services, Inc.* 333 F.3d 82 (2nd Cir. 2003). In *Alibrandi*, the debt collector agreed to collect the creditor's debts "only as a service provider and not a collection agency." *Id*. When sued for violating the FDCPA, the debt collector argued that the debt was not in default based on its agreement with the creditor. *Id*. The Court of Appeals rejected this defense, holding that a debt collector cannot change the status of a

9

debt by agreement with the creditor, even if the debt collector "may sincerely have believed it was servicing a debt that was not in default . . ." *Id.* at 88.

### C. Summary judgment is premature because of the pending discovery issues.

Many of the issues raised by the parties require further discovery in order to establish a more complete record. Federal Rule of Civil Procedure 56(d) allows the Court to permit for further discovery prior to ruling on a motion for summary judgment. Under Fed. R. Civ. P. 56(d):

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Here, NPAS has refused to turn over complete account records and only provided its debt collection policies and compliance and training manuals after depositions were taken in May 2016, in violation of the January 5, 2016 court order requiring production of these materials. Ms. Fausz has requested further discovery to remedy these discovery abuses in a motion for sanctions now pending before the Court. Additionally, further discovery is needed from the Hospital's accounting firm, Ernst & Young, LLP, pursuant to a subpoena duces tecum. At this time, the attorneys for Ernst & Young are working with Plaintiff's counsel to resolve disputes over providing this information. In accordance with Civil Rule 26(d), Plaintiff's counsel states that further discovery is necessary on the issue of default and the *bona fide* error defense.

### D. Ms. Fausz has standing to assert her claims.

Ms. Fausz has standing to assert her FDCPA claims. To invoke the jurisdiction of federal courts, a plaintiff must demonstrate an "injury in fact" that is "fairly traceable" to the defendant's misconduct and "likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S.Ct. 1540, 1543 (2016). In order to satisfy the injury-in-fact requirement, the injury

10

must be both "concrete and particularized." *Id*. For an injury to be concrete, it must be real and certain. However, the injury need not be a tangible economic or physical harm. Congress may create a legally cognizable injury by statute. Indeed, as the Supreme Court noted, the invasion of a statutory right to information satisfies the 'concrete' element. *Id*.

   i. *The FDCPA creates substantive consumer rights and defines the sort of concrete and particularized injury suffered by Plaintiff.*

  The FDCPA defines the sort of concrete and particularized injury suffered by Ms. Fausz and provides aggrieved consumers with the means for seeking redress. Congress enacted the FDCPA to protect consumers from unfair and abusive debt collection practices. Under the Act, a consumer has the right to receive information from a debt collector about a debt, including how to dispute the debt and obtain more information about the debt. 15 U.S.C. § 1692g(a). A consumer is also entitled to a disclosure that if the consumer disputes the debt, or any portion of it, the debt collector must obtain verification of the debt and mail a copy of the verification to the consumer. *Id*. If the consumer disputes the debt, or any portion thereof, in writing, within 30 days of receiving the 1692g(a) notice, the debt collector must cease its collection efforts until it complies with the statutory verification requirement. 15 U.S.C. § 1692g(b). A consumer also has the right to a warning that a communication is from a debt collector and that any information may be used for the purpose of collection. 15 U.S.C. § 1692e(11).

  Thus, in the context of the FDCPA, a plaintiff states an injury-in-fact based on a debt collector's failure to provide the Section 1692g(a) and 1692e(11) disclosures. *Church v. Accretive Health, Inc.,* 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016). In *Church,* a consumer filed a class action alleging that a debt collector failed to include FDCPA-required disclosures, but did not allege actual damages. *Id*. Despite the lack of a damages averment, the court of appeals found

that the invasion of the consumer's right to the FDCPA-required disclosures was sufficient to establish Article III standing.

In addition to the Eleventh Circuit, multiple district courts have held that a violation of FDCPA itself confers standing. *Linehan v. Allianceone Receivables*, 2016 WL 4765839, at *7 (W.D. Wa. September 9, 2016)(invasion of right to FDCPA disclosures is not hypothetical or uncertain); *Prindle v. Carrington Mortg. Servs., LLC,* 2016 WL 4369424, at *11 (M.D. Fla. August 16, 2016)(Section 1692e confers a personal, statutory right); *Daubert v. Nra Grp., LLC*, 2016 WL 4245560, at *4 (M.D. Pa. August 11, 2016)(unlawful disclosure of information is concrete harm); *Quinn v. Specialized Loan Servicing, LLC*, 2016 WL 4264967, at *5 (N.D. Ill. August 11, 2016)(failure to provide FDCPA disclosures was concrete harm); *Irvine v. I.C. Sys., Inc.*, ____ F. Supp. 3d ____, 2016 WL 4196812, at *3 (D. Co. July 29, 2016)(debt collector violated consumer's substantive FDCPA rights); *McCamis v. Servis One, Inc.*, 2016 WL 4063403 at *2 (M.D. Fla. July 29, 2016)(FDCPA creates substantive rights); *Dickens v. GC Servs. Ltd. P'ship*, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016); *Lane v. Bayview Loan Servicing, LLC*, 2016 WL 3671467 at *5 (N.D. Ill. July 11, 2016)(loss of validation right was a concrete harm); *Tourgeman v. Collins Financial Servs., Inc.*, ____ F. Supp. 3d ____, 2016 WL 3919633 at *3 (S.D. Cal. June 16, 2016)(erroneous information in debt collector's complaint amounted to actual harm); *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 827 (E.D. Va. 2015) ("The 'injury in fact' suffered by Plaintiffs under the FDCPA is not any actual economic loss, but rather being subjected to the allegedly 'unfair and abusive practices' . . ."); *Sayles v. Advanced Recovery Systems, Inc.*, 2016 WL 4522822 (S.D. Ms. August 26, 2016)(violation of 1692g and 1692e conferred standing).

>             *ii.     Ms. Fausz suffered an injury in fact.*

Ms. Fausz alleges an injury that is both particularized and concrete. In her complaint, Ms. Fausz averred that as the result of NPAS' conduct, she and the putative class members "suffered and will continue to suffer harm and damage." (Complaint ¶ 33). Specifically, NPAS violated Ms. Fausz's right to information about the debt, including a validation notice and a mini-Miranda notice, and to dispute the validity of the debt, rights conferred by Sections 1692g(a) and 1692e(11) of the FDCPA. These violations caused worry, confusion, and the lost opportunity to obtain verification of the debt (and at the very minimum procure an abatement of collection efforts pending verification). NPAS fails to address any of the FDCPA cases following the *Spokeo* decision. Instead, NPAS relies primarily on three unpublished district court decisions in support of its argument that Ms. Fausz has not suffered an injury sufficient for standing. *Larson v. Trans Union, LLC*, No. 12-cv-05726-WHO, 2016 WL 4367253, at *3 (N.D. Cal. Aug. 11, 2016); *Nokchan v. Lyft, Inc.*, 2016 WL 5815287, at *9; *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 WL 4099109, at *4, *7 (E.D.N.Y. Aug. 2, 2016). Each of these cases is distinguishable from the present case. These cases consist of two Fair Credit Reporting Act cases and a Real Estate Settlement Practices Act case.

>             *iii.    The arguments of NPAS on the standing issue are not well reasoned.*

NPAS' analysis of standing is incomplete and flawed because it relies exclusively on non-FDCPA cases. Moreover, NPAS misrepresents the facts. A proper analysis must address the particular statute in issue, the FDCPA, and accurately convey the facts. This is because, by statute, Congress may define new *de facto* injuries that will give rise to a case or controversy. *Spokeo*, 136 S.Ct.1540, 1549. Thus, whether a statute defines a legally cognizable injury, and

therefore whether a case or controversy may arise under that statute, depends on the application of the particular statute to the specific facts.

NPAS mischaracterized Ms. Fausz's deposition testimony by suggesting she admitted that she suffered no "actual damages." This is untrue. Ms. Fausz did not testify that she did not suffer actual damages, only that she was not pursuing an individual claim for actual damages. In the deposition, NPAS' counsel, John Boyle, defined "actual damages" as "your seeking monetary recovery for the damages you sustained." (Depo. Fausz 43:13-14). Ms. Fausz was understandably confused by Mr. Boyle's use of the term. (Depo. Fausz 42:21-24). Despite the confusion, Ms. Fausz advised she is seeking "monetary relief" on behalf of the class. (Depo. Fausz 33:11).

In her deposition, Ms. Fausz testified that as a result of the February 11, 2014 letter, she was "really confused." (Depo. Fausz 95:11). She indicated she suffered "stress" as a result of the letter. (Depo. Fausz 51:15-20). She implied she suffered reputational injury. (Depo. Fausz 45:3-4;46:15-18). She stated that the "damage . . . is there," referring to legal fees incurred to enforce the law. (Depo. Fausz 42:12). She explained that people should be given the opportunity to challenge the validity of a debt. (Depo. Fausz 30:10-13; 34:8-10). She expressed a belief that her credit may have been adversely affected because the debt has been turned over to collections. (Depo. Fausz 46:6-10). Indeed, Ms. Fausz refused to admit that she did not suffer damages. (Depo. Fausz 42:21-24). Rather, when asked whether she suffered actual damages, Ms. Fausz testified "I feel as if I have." (Depo. Fausz 43:12). These facts establish that Ms. Fausz suffered a concrete and particularized injury. Accordingly, she has standing under Article III.

### E. NPAS is not entitled to summary judgment based on its bona fide error defense.

NPAS is not entitled to summary judgment based on its *bona fide* error defense. To avail itself of a bona fide error defense, a debt collector must show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The debt collector must present evidence that: (1) the violation was unintentional; (2) the violation was the result of a *bona fide* error; and (3) the debt collector maintained procedures reasonably adapted to avoid the error. *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606 (6th Cir. 2009). The *bona fide* error defense does not apply to mistakes of law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).

NPAS' defense fails for three reasons. First, NPAS admits it does not comply with the FDCPA. (Depo. Summers 113:16). Thus, NPAS cannot claim its violation of the FDCPA was unintentional, the result of a *bona fide* error, or that it attempted to comply with the FDCPA. NPAS elects to not comply with the statute and thus is not entitled to the *bona fide* error defense.

Second, NPAS contends it is not a "debt collector" subject to the FDCPA based on its mistaken belief that the accounts it collects are not in "default" under the law. NPAS' mistaken interpretation of the law cannot serve as the basis for a *bona fide* error defense. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).

Third, NPAS has presented no evidence that its violation of the FDCPA was unintentional or that it maintained reasonable procedures for avoiding such error. Rather, NPAS cites only to its contract with the Hospital wherein the Hospital agreed to place only non-defaulted accounts with NPAS. However, blind reliance on a creditor's statements about a debt

15

is insufficient to make out the defense, when the debt collector fails to maintain reasonable procedures to avoid violations. *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002 (9th Cir. 2008).

NPAS maintained no such procedures to avoid violations of the FDCPA. NPAS' agreement with the Hospital does not define "default," and the Hospital does not use the term "default" to describe accounts in default. Indeed, a debt collector may not change the status of a debt through its agreement with the creditor. *Alibrandi v. Financial Outsourcing Services, Inc.* 333 F.3d 82 (2nd Cir. 2003). Timothy Steadmon, Director of Operations for NPAS, admitted he did not know how the Hospital defined "default." (Depo. Steadmon 46:19-21). Yet, he was certain NPAS never collected a defaulted account. (Depo. Steadmon 30:13-17). Ms. Summers was less sure, stating that NPAS' clients are not supposed to place defaulted accounts, but that it could happen. (Depo. Summers 34:12-18). Mr. Steadmon conceded that if an account had been sent to a "debt agency" before placement with NPAS, the account would be in default. (Depo. Steadmon 62:16-63:14). Nevertheless, NPAS did not have any procedures in place to screen defaulted accounts. In fact, NPAS never audited accounts it received from the Hospital to ensure the accounts were in default. (Depo. Steadmon 64:2-12). Thus, NPAS' reliance on its engagement agreement was not reasonable.

IV. CONCLUSION.

NPAS' motion for summary judgment is not well taken and must be denied. A reasonable jury could believe that Ms. Fausz's debt was in default when placed with NPAS. Moreover, summary judgment is premature because discovery is incomplete. Ms. Fausz suffered an injury in fact and has standing to seek redress for the violations of her substantive rights. Finally, NPAS

16

fails to make out a bona fide error defense. For these reasons, Ms. Fausz respectfully requests this Court to DENY NPAS' motion for summary judgment, or, alternatively, delay ruling on the motion until after the discovery disputes are resolved.

Respectfully submitted,

*/s/ Zachary L. Taylor*
ZACHARY L. TAYLOR
2815 Taylorsville Road, Suite 102
Louisville, Kentucky 40205
Phone | Fax: (502) 822-2500
ztaylor@taylorlawcenter.com

NINA COUCH
Couch Law, PLLC
2815 Taylorsville Road, Suite 101
Louisville, Kentucky 40205
Phone: (502) 550-4933
Email: couchlawpllc@gmail.com

## CERTIFICATE OF SERVICE

It is hereby certified a true and correct copy hereof will be electronically transmitted to all counsel of record on this the 10th day of November 2016 via the Court's ECF/CM filing system.

*/s/ Zachary L. Taylor*
