UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELLA J. FAUSZ, individually,
and on behalf of a class of similarly situated persons                    PLAINTIFFS

v.                                                    CIVIL ACTION NO. 3:15-cv-00145-CRS-DW

NPAS, Inc.                                                                 DEFENDANT

<u>Memorandum Opinion</u>

I.   <u>Introduction</u>

This matter is before the Court on the motion of Defendant NPAS, Inc. ("NPAS") for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 53. Plaintiff Ella Fausz, individually and behalf of a putative class of similarly situated persons, responded, ECF No. 56. NPAS replied, ECF No. 58.

NPAS also moved for a hearing and oral argument on the issues that are raised in its motion for summary judgment, ECF No. 55. Fausz did not object, ECF No. 57. As NPAS's motions concern the same facts and issues, the Court will address them in a single memorandum opinion and order. For the reasons explained below, the Court will grant in part and deny in part NPAS's motion for summary judgment. The Court will also deny NPAS's motion for a hearing and oral argument on the issues discussed in the motion for summary judgment.

II.   <u>Background</u>

    A.   <u>Springfield Regional Medical Center's Process of Obtaining Payment</u>

Springfield Regional Medical Center ("the hospital") is part of Community Mercy Health Partners, a regional healthcare system. Ex. B, ECF No. 53-4. When the hospital attempts to obtain payment on overdue patient accounts, it does not use the term "default," regardless of how

many days the payment is overdue. Napier Dep. 3, ECF No. 53-6. Nor does the hospital use the term "delinquent" or "past due." *Id*. Instead, the hospital describes the patient accounts as "aging." *Id*.; *see also* Crum Aff. ¶ 7, ECF No. 56-6. The patient accounts are assigned an aging category in 30-day increments based on the date of discharge. Crum Aff. ¶ 7, ECF No. 56-6. After the patient accounts age for 360 days, the hospital assumes that no additional payment will be received for such accounts. *Id*. ¶¶ 12–13.

The hospital engages in several steps to collect balances on patient accounts. When patients are admitted to the hospital's emergency room and are unable to provide their insurance information, the hospital later sends them statements for payment of the medical services that they received. Napier Dep. 3, ECF No. 56-5. The hospital initially seeks to be reimbursed for its services from third-party payors, including insurance companies. *Id*. If third-party payors do not reimburse the hospital or if a balance on the account remains after the third-party payor provides partial reimbursement, it sends the patient an account statement. *Id*. If the patient does not pay the balance on the account, the hospital sends a second statement. Gaffey Dep. 2, ECF No. 53-7. The hospital also sends the patient a financial aid application. *Id*.

If the patient still does not pay the balance, the hospital sends the patient account to an early-out vendor. *Id*. at 2, 5; Napier Dep. 3, ECF No. 56-5. The hospital considers the early-out vendors an extension of its business office. Gaffey Dep. 4, ECF No. 53-7. The early-out vendor provides the patient with additional information about the account balance. *Id*. at 2. The early-out vendor makes "proactive communication[s]" regarding the patient's "open balances" and "options" for paying them. *Id*.

Finally, the hospital sends the account to a collection agency. Napier Dep. 7, ECF No. 53-6. Accounts that the hospital sends to a collection agency have generally aged more than six

months. *Id*. at 6. But if a patient had been making some payments, the accounts could age for longer before being sent to a collection agency. *Id*. at 7.

      B.    <u>NPAS</u>

NPAS is an early-out vendor that provided business services to the hospital. *Id*. at 2. NPAS agreed to "use commercially reasonably reasonable efforts to collect the amounts owed [on patient accounts], which may [have] include[d] phone calls and written communications with guarantors, and/or third party agencies or payors that may [have] be[en] responsible for the patient account. These efforts [were] intended to resolve/liquidate the accounts within a 90-day time frame." Service Agreement 1, ECF No. 53-8.

NPAS operates call centers in Louisville, Kentucky and in Texas. Summers Dep. 5, ECF No. 56-2. NPAS is a licensed collection agency in some states. Steadmon Dep. 4, ECF No. 56-1. It receives a portion of the monies that it recovers for its services. Summers Dep. 2, ECF No. 56-2; Service Agreement 1, ECF No. 53-8. NPAS does not engage in credit reporting. Summers Aff. ¶ 5, ECF No. 53-10.

As described in its service agreement with the hospital, NPAS does not receive any patient accounts that are in default, patient accounts that are considered in default, or patient accounts on which it would not have a legal right to collect. Service Agreement 2, ECF No. 53-8. The service agreement, however, does not define when patient accounts are in default. *Id*.

      C.    <u>Fausz's Accident and Collection of her Account Balance</u>

In August 2011, Fausz was sitting in the front passenger seat of a car that was stopped for a red light when "somebody plowed into the back end" of the vehicle. Fausz Dep. 9, 11, ECF No. 53-3. An ambulance transported her to the hospital. *Id*. at 5, 8, 10. There, she was treated for whiplash and lower back injuries. *Id*. at 11.

About a week after Fausz was treated for her injuries, the hospital sent Fausz's account statement to her insurance carrier, Cincinnati Insurance Company. Claim, ECF No. 56-3. The patient account balance totaled $3,515.50. *Id*. When Cincinnati Insurance Company did not pay the account balance, Medical Reimbursements of America (MRA), a medical reimbursement company, mailed Fausz's attorney a series of three letters on behalf of the hospital. Napier Dep. 3, ECF No. 56-5; MRA Letter 9/1/2011, ECF No. 56-7; MRA Letter 11/15/2011, ECF No. 56-8; MRA Letter 4/12/2012, ECF No. 56-9. In September 2011, MRA sent its first letter to Fausz's attorney, which explained that it sought information about potential payment sources for Fausz's medical debt, such as sources of insurance. MRA Letter 9/1/2011, ECF No. 56-7. In November 2011, MRA send a second letter to Fausz's attorney seeking the same payment information. MRA Letter 11/15/2011, ECF No. 56-8. And in April 2012, MRA sent a third letter to her attorney, which also sought the same payment information. MRA Letter 4/12/2012, ECF No. 56-9.

One month later, in May 2012, the hospital sent Fausz a statement explaining that she was personally responsible for paying her $3,515.50 patient account balance. May Statement, ECF No. 12. Then in June 2012, the hospital sent her a second statement that asserted that her patient account was past due. June Statement, ECF No. 13. During this period of time, the hospital also apparently called Fausz several times to discuss payment of her patient account balance. Fausz Dep. 2, ECF No. 56-10. In July 2012, MedPay Assurance, another medical reimbursement company, sent a letter to Fausz to attempt to collect the balance on her patient account. Napier Dep. 5, ECF No. 53-6; MedPay Letter 7/5/2012, ECF No. 56-14.

The following month, NPAS sent Fausz a letter to collect the unpaid patient account balance. NPAS Letter 8/3/2012, ECF No. 56-15. As Fausz did not pay her medical debt by

4

December 2012, the hospital recorded in its account ledger that it estimated it would receive $0.00 in revenue on the debt. A/R Aging Ledger, ECF No. 16.

In February 2013, the hospital referred Fausz's account to United Collections Bureau, Inc., a licensed debt collection agency. UCB Letter 2/11/2013, ECF No. 17. United Collections Bureau, Inc. sent Fausz a dunning letter in which it explained that it was seeking payment of her account balance and that it was a debt collector. *Id*.

In January 2014, the hospital referred Fausz's account to NPAS. Resp. Interrog. 5, ECF No. 56-18. A month later, NPAS sent a letter to Fausz. NPAS Letter 2/11/2014, ECF No. 56-15. The letter explained that NPAS sought payment on the patient account. *Id*. The letter asserted, "Recognizing you have a choice in selecting your healthcare provider, thank you for choosing Springfield Regional Medical Center." *Id*. It further stated, "Our records reflect that you were previously contacted regarding the unpaid balance in the amount shown above. We urge you to send payment in full today." *Id*. NPAS did not identify itself as a debt collector in the letter. *Id*.

    C.    <u>Fauz's Claims against NPAS</u>

As result of the letter sent in February 2014, Fausz brought the current putative class action against NPAS. Compl., ECF No. 1. Fausz asserts her claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. *Id*. Fausz contends that NPAS's February 2014 letter contained false, deceptive, or misleading representations and thus violated 15 U.S.C. § 1692e(11) because NPAS failed to identify itself or a debt collector or provide that any information it obtained would be used for a debt collection purpose (Count I). *Id*. ¶¶ 18–22. Fausz also alleges that NPAS's February 2014 letter failed to provide information required under 15 U.S.C. § 1692g(a), including (1) a statement that the debt collector will assume the debt to be valid if the consumer does not contest the validity of the debt within thirty days, (2) a statement

5

that if the consumer contests the debt within thirty days, the debt collector will obtain and mail to the consumer verification of the debt or a copy of a judgment against the consumer, and (3) a statement that the debt collector will provide the consumer with the name and address of the original debt holder if the consumer sends a written request for the information within thirty days (Count II). *Id*. ¶¶ 23–26. Fausz asserts her claims on "behalf of all individuals who received letters from NPAS seeking to collect medical debt within one year from the filing on this action." *Id*. ¶ 27. She seeks actual damages and statutory damages up to one-thousand dollars per 15 U.S.C. § 1692k for each member of the putative class. *Id*. ¶ 27, 7–8. Fausz also seeks an injunction preventing NPAS from violating the FDCPA, and attorney fees and costs. *Id*. at 7–8.

III. Discussion

NPAS now moves for summary judgment on Fausz's claims under Federal Rule of Civil Procedure 56(a). Mot. Summ. J., ECF No. 53. Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

NPAS argues that the Court should grant its motion for summary judgment for four reasons. First, NPAS asserts that Fausz lacks Article III standing to assert the action because she

has not suffered a concrete injury in fact. Mem. Supp. Mot. Summ. J. 14–20, ECF No. 53-1. Second, NPAS contends that it is not a debt collector because Fausz's account was not in default when it sent her the February 2014 letter and thus that it could not violate the FDCPA as a matter of law. *Id*. at 21–30. Third, NPAS asserts that Fausz's claims fail as a matter of law because she has not pled and cannot show that it made any misrepresentations in the February 2014 letter that materially impacted her decision-making. *Id*. at 30–32. Fourth and finally, NPAS argues that, even if it acted as a debt collector subject to the requirements of the FDCPA, it may claim the bona fide error defense: it has reasonable procedures and contracts in place to ensure that hospitals do not place with it any defaulted debts, and any attempt it made to collect a defaulted debt mistakenly sent to it by the hospital was unintentional and occurred notwithstanding these reasonable procedures. *Id*. at 32–36.

      A.     <u>Whether Fausz Has Standing to Assert Her FDCPA Claims</u>

NPAS asserts Fausz lacks standing to assert her FDCPA claims and thus its motion for summary judgment should be granted because she has not yet pled a concrete injury in fact and because she has not suffered an "informational injury." *Id*. at 14–20. Fausz maintains in opposition that she has standing to assert her claims because she has alleged an injury that is both particularized and concrete. Resp. Opp. Mot. Summ. J. 13, ECF No. 56.

Article III limits federal courts to hearing "actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). Article III has given rise to the doctrine of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires that the plaintiff demonstrate three elements to bring a case in federal court. *Id*. First, the plaintiff must have suffered an "injury in fact." *Id*. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or hypothetical.'"

7

*Id*. (internal citations omitted). Second, there must be a "causal connection" between the injury and the conduct of which the plaintiff complains. *Id*. Third, it must be likely that the injury will be "redressed by a favorable decision" by the court. *Id*. at 561 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

Regarding the injury-in-fact requirement of standing, the Supreme Court recently reiterated that the plaintiff's injury must "actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). The Court also noted, however, that the plaintiff's injury need not be tangible to be concrete and that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id*. at 1549 (citing *Lujan*, 504 U.S. at 578)). Therefore, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id*. The Court added that the "risk of real harm" could mean "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" and under such circumstances, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified." *Id*. (emphasis in original).

Congress designed the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA provides in relevant part that consumers have the right to receive several types of information about their debts, such as the amount of the debt, the name of the debt holder, and notice that if the debt is not challenged within thirty days, the debt will be assumed valid. *Id*. § 1692g(a). If the consumer disputes the debt within thirty days of receiving the written notice of the debt, the debt collector must stop any collection activities and communication efforts until the debtor receives

verification of the debt or a copy of the judgment. *Id*. § 1692g(b). A consumer also has the right to a notice that the debt collector is trying to collect a debt and that "any information obtained will be used for that purpose." *Id*. § 1692e(11).

As revealed by this Court's search of the current case law in this circuit, the United States Court of Appeals for the Sixth Circuit has determined that an alleged violation of the FDCPA confers standing. *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 448–49 (6th Cir. 2014) (internal citations omitted); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008). In *Stratton*, the appellate court asserted that the FDCPA "is a strict liability statute: A plaintiff does not need to prove knowledge or intent . . . and does not have to have suffered actual damages." 770 F.3d at 448–49. The Sixth Circuit explained, "Strict liability places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debtor collector behavior without a possibility for relief." *Id*. at 450.

Other courts ruling on the issue in the wake of *Spokeo* have found that an alleged violation of the FDCPA confers standing. For example, in *Church v. Accretive Health, Inc.*, the United States Court of Appeals for the Eleventh Circuit determined that "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." 654 Fed. App'x 990, 994 (11th Cir. 2016); *see also Linehan v. AllianceOne Receivables Mgmt.*, No. C15-1012-JCC, 2016 U.S. Dist. LEXIS 124276, at *24 (W.D. Wash. Sept. 13, 2016) ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury."); *Daubert v. Nra Grp., LLC*, No. 3:15-CV-00718, 2016 U.S. Dist. LEXIS 105909, at *12 (M.D. Pa. Aug. 11, 2016)

("Plaintiff's injury is also the unlawful disclosure of legally protected information. . . . [B]oth history and the judgment of Congress demonstrate that the unlawful disclosure of legally protected information is a concrete harm that is sufficient to confer standing."); *Dickens v. GC Servs. Ltd. P'ship*, No. 8:16-cv-803-T-30TGW, 2016 U.S. Dist. LEXIS 94621, at *5 (M.D. Fla. July 20, 2016) ("Congress, through the FDCPA, entitled the plaintiff to certain information, and thus an alleged invasion of this right is not hypothetical or uncertain.").

This Court will follow current Sixth Circuit precedent and the precedent from other courts that hold an alleged violation of the FDCPA confers standing. In this case, Fausz alleges that the FDCPA governs the letter and thus that she had a right to receive the FDCPA-required disclosures. Compl. ¶ 24, ECF No. 1. The letter that NPAS sent Fausz in February 2014 does not contain the disclosures mandated under the FDCPA. NPAS Letter 2/11/2014, ECF No. 56-15. As such, Fausz has standing to assert her claims.

NPAS asserts that "Plaintiff admitted in her sworn deposition that she suffered no actual damages in this case." Mem. Supp. Mot. Summ. J. 17, ECF No. 53-1; Reply 2–3, ECF No. 58. Because the FDCPA is a strict liability statute, she need not show that she has suffered actual damages to have standing. *See Stratton*, 770 F.3d at 449–50.

Given that Fausz asserts an alleged injury resulting from NPAS's failure to adhere to the requirements of the FDCPA when it sent her the February 2014 letter, NPAS's standing argument fails.

  B.  <u>Whether NPAS is a Debt Collector under the FDCPA</u>

NPAS also argues that its motion for summary judgment should be granted, even if Fausz has shown that she has a concrete injury in fact, because it did not act as a debt collector and thus could not violate the FDCPA as a matter of law. Mem. Supp. Mot. Summ. J. 21–30, ECF No. 53-

1. NPAS explains that the FDCPA regulates the conduct only of debt collectors. *Id*. "Debt collector" applies only when the debtor's account was in default. *Id*. And, NPAS asserts, whether an account was "in default" depends on how the debt holder defined the debt. *Id*. Based on the hospital's treatment of Fausz's debt, NPAS contends that her account was not in default when it sent her the letter in February 2014. *Id*.

Fausz agrees that the FDCPA regulates the conduct only of debt collectors and that "debt collector" is a term that applies only when the debtor's account was in default. Resp. Opp. Mot. Summ. J. 6, ECF No. 56. But she urges this Court to use the dictionary definition of "in default" to determine whether an account was in default. *Id*. Fausz asserts that under the dictionary definition of default, her account was in default when she failed to pay her account balance after the hospital demanded payment of in 2012.[1] *Id*. at 7. She further argues that, regardless of how in default is defined, including how the debt holder treated the debt, she has presented sufficient evidence that her account was in default to create a genuine dispute of material fact concerning whether NPAS acted as debt collector subject to the FDCPA. *Id*. at 6–10.

Statutory liability under the FDCPA is limited only to debt collectors. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 104 (6th Cir. 1996). The statute defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). A debt collector does not, however, regulate the conduct of a person who attempts to collect a debt that is not in default. *Id*. § 1692a(6)(F)(iii). Congress did not specify

---

[1] Black's Law Dictionary defines "default" as "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." (10th Ed.).

11

the meaning of when an account is "in default" when it enacted the FDCPA. *Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1027 (S.D. Ind. 2007); *see also Alibrandi v. Fin. Outsourcing Servs.*, 333 F.3d 82, 86 (2d Cir. 2003).

The Sixth Circuit has not yet directly defined the meaning of "in default" in regards to the FDCPA. *Geary v. Green Tree Serv., LLC*, No. 2:14-cv-00522, 2015 U.S. Dist. LEXIS 35059, at *17 (S.D. Ohio Mar. 20, 2015). But the Sixth Circuit has provided some guidance on the matter, which suggests that whether an account is in default depends on how the debt holder defines the debt. In *Bridge v. Ocwen Federal Bank*, FSB, the appellate court stated that the FDCPA should be applied "broadly according to its terms." 681 F.3d 355, 362 (6th Cir. 2012). Additionally, the *Bridge* court held that the "the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or *has treated the debt as if it were in default* at the time of acquisition. It matters not whether such treatment was due to a clerical mistake, other error, or intention." *Id*. (emphasis added).

Other courts have defined "in default" in regards to the FDCPA as whether the debt holder categorized or treated the debt as being in default. For example, in *Prince v. NCO Financial Services*, the plaintiff sought to bring a class action lawsuit on behalf of herself and other consumers against the defendant, NCO Financial Services (NCO), which collected on accounts for Capital One Bank, for violations of the FDCPA. 346 F. Supp. 2d 744, 745 (E.D. Pa. 2004). NCO moved for summary judgment, arguing that the plaintiff's account was not in default when it obtained the debt and thus that it could not have acted as a debt collector. *Id*. at 747.

The United States District Court for the Eastern District of Pennsylvania examined Capital One Bank's standard customer agreement to see how the parties defined when a debt was

in default. *Id*. at 749. The standard customer agreement included the following definition of default:

> Default. We may consider you to be in default under this Agreement if: (a) you fail to pay the minimum payment on time, (b) you exceed your credit limit, or (c) you pay us with funds that are returned for any reason. To the extent permitted by law, you may also be in default under this Agreement if: (1) you violate any of the other terms of this Agreement, or any of the terms of any other agreement with us or any of our affiliates, or (2) you made any false or misleading statements on your application, or (3) bankruptcy or other insolvency proceedings are instituted by you or against you.

*Id*. Thus, under this definition, an account was in default when Capital One Bank treated the debt as being in default. *Id*. Because the plaintiff did not provide any evidence showing that Capital One Bank had treated the debt as being in default, the court found that there was not a genuine dispute of material fact about whether the debt was in default and granted NCO's motion for summary judgment. *Id*. at 749–51.

Similarly, in *Alibrandi*, a lessor of an automobile concluded that the plaintiff owed it $543.98. 333 F.2d at 83. The lessor retained a debt collector, North Shore, to help collect the money. *Id*. North Shore wrote a letter to the plaintiff in which it identified itself as a debt collector. *Id*. The letter also included the information that the FDCPA requires to be provided in debt-collector correspondence. *Id*. Later, Financial Outsourcing, a different financial institution, wrote a letter to the plaintiff seeking payment of the debt. *Id*. at 84. Financial Outsourcing's letter stated that it was "servicing" the plaintiff's account and that the account was "not in default." *Id*. The plaintiff sued Financial Outsourcing for its failure to include the FDCPA-required information in the letter. *Id*. Financial Outsourcing maintained it was not a "debt collector" under the FDCPA because it had agreed in a contract with the lessor that it was not a debt collector and that debts such as the plaintiff's would not be considered either as delinquent

13

or in default. *Id*. The district court granted Financial Outsourcing's motion for summary judgment. *Id*.

On appeal, the United States Court of Appeals for the Second Circuit asserted, "In applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." 333 F.2d at 87. The *Alibrandi* panel rejected the plaintiff's argument that a debt is defined as "in default" as soon as it is due. *Id*. The court opined that "the interests of debtors, creditors, collectors, and debt service providers will best be served by affording creditors and debtors considerable leeway contractually to define their own periods of default, according to their respective circumstances and business interests." *Id*. at 87 n.5.

The Second Circuit then asserted that if the lessor hired North Shore to pursue the plaintiff's debt, "North Shore's self-identification as a debt collector constituted a declaration by [the lessor] that [the plaintiff's] debt was in default." *Id*. at 88. Moreover, "Financial Outsourcing may sincerely have believed it was servicing a debt that was not in default, but that is irrelevant. If [the lessor] had, through North Shore, declared [the plaintiff's] outstanding debt to be in default, then the default would have continued during Financial Outsourcing's subsequent collection efforts and Financial Outsourcing would have been obligated to include in its correspondence with [the plaintiff] the warnings required by the Act." *Id*. The appellate court thus vacated the district court's grant of summary judgment. *Id*.

Given the guidance of the Sixth Circuit and that of these other courts, this Court will look to the language of the FDCPA and to how the hospital, as the debt holder, treated Fausz's patient account to determine if the account was in default when NPAS sent the February 2014 letter. In February 2013, the hospital sent Fausz's patient account to United Collections Bureau, Inc., a

14

debt collection agency, who mailed Fausz a dunning letter in which it identified itself as a debt collector and included the information required by the FDCPA. UCB Letter 2/11/2013, ECF No. 17. Under the FDCPA, a debt collector collects debts that are in default. *See* 15 U.S.C. § 1692a(6)(F)(iii). Therefore, this Court finds that that the hospital, in referring the patient account to a debt collection agency, deemed her patient account to be in default. NPAS's argument that because Fausz's account was not in default, it could not act as a debt collector and could not violate the FDCPA as a matter of law is unavailing.

### C. Whether NPAS's Letter Made Material Misrepresentations

NPAS argues that, even if it was a debt collector subject to the FDCPA and even if Fausz had demonstrated a concrete injury in fact, summary judgment should be granted on Count I, which alleges that NPAS failed to identify itself as a debt collector or provide that any information obtained would be used for a debt collection purpose in its February 2014 letter and thus violated 15 U.S.C. § 1692e(11), because she has not pled or shown that it made any material misrepresentations that affected her decision-making ability.[2] Mem. Supp. Mot. Summ. J. 30–32, ECF No. 53-1. Fausz does not appear to rebut this assertion. *See* Resp. Opp. Mot. Summ. J., ECF No. 56.

Section 1692e of the FDCPA states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." As noted above, under § 1692e(11), this prohibited conduct includes failing to disclose that the debt

---

[2] NPAS asserts that the complaint should be dismissed based upon its argument that its alleged misrepresentations were not material. Mot. Summ. J. 32, ECF No. 53-1. But NPAS's materiality argument only addresses Count I of the complaint, which is asserted under 15 U.S.C. § 1692e(11). This Court will thus assume that NPAS intended that its materiality argument apply only apply to Count I.

collector is trying to collect a debt and that "any information obtained will be used for that purpose."

As also noted above, this section of the FDCPA "operates under a strict liability theory." *Sexton v. Bank of New York Mellon*, 2016 U.S. Dist. LEXIS 98435, at *19 (E.D. Ky. July 28, 2016) (citing *Stratton*, 770 F.3d at 449–50)). To determine if a debt collector's actions are false, deceptive, or misleading under § 1692e of the FDCP, the court must examine whether the "least sophisticated consumer" would be misled by the conduct. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). The "least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers as well as the shrewd." *Stratton., LLC*, 770 F.3d at 450 (2014) (citing *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007)). Additionally, the conduct must be *materially* false or misleading. *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (emphasis in original). This means that the debt collector's conduct is not only "technically false" but also "would tend to mislead or confuse the reasonable unsophisticated consumer." *Id*.

Even taking the evidence in the light most favorable to Fausz, she has not shown that NPAS's failure in its February 2014 letter to identify itself as a debt collector or to provide that any information that it obtained would be used for a debt collection purpose was materially false or misleading. At most, in her deposition, Fausz stated that she assumed that NPAS was acting as debt collector. Fausz Dep. ¶ 21, ECF No. 53-3. Yet, this does not show that a reasonable, unsophisticated consumer would be misled or confused by the February 2014 letter's omissions. As such, there is not a genuine dispute of material fact regarding whether NPAS's omissions in its letter were material. The Court will thus grant summary judgment on Count I.

D.  Whether NPAS Has Reasonable Procedures and Contracts in Place Such that Any Attempts to Collect a Defaulted Debt Would Have Been Unintentional

NPAS finally contends that summary judgment should be granted on Fausz's claims regardless of whether it violated the FDCPA because of the bona fide error defense. Mem. Supp. Mot. Summ. J. 32–36, ECF No. 53-1. NPAS clarifies that it has reasonable procedures and contracts to prevent it from taking any defaulted debts and any attempt it made to collect a defaulted debt mistakenly sent to it by the hospital was unintentional. *Id*. Fausz, however, argues that NPAS is unable to rely on a bona fide error defense and that its motion for summary judgment should thus be denied. Resp. Opp. Mot. Summ. J. 15–16.

Under the bona error defense, a debt collector will not violate the FDCPA if it can demonstrate "by a preponderance of evidence" that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To qualify for the FDCPA's bona fide error defense, the debt collector must show that "(1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476–77 (6th Cir. 2008), *rev'd on other grounds*, 559 U.S. 573 (2010)). The bona fide error defense does not apply to mistakes of law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.,* 559 U.S. 573, 604–05 (2010).

In this case, taking all facts in the light most favorable to Fausz, there is a genuine dispute of material fact as to whether NPAS maintained reasonable procedures adapted to avoid violations of the FDCPA. NPAS's service agreement with the hospital states that NPAS does not receive any patient accounts that are in default or patient accounts on which it would not have a

17

legal right to collect. Service Agreement 2, ECF No. 53-8. But the service agreement does not define when patient accounts are in default. *Id*. And the hospital does not use the term "default" when describing patient accounts, regardless of how long the account has been overdue; instead it uses the term "aging." Napier Dep. 3, ECF No. 53-6; Crum Aff. ¶ 7, ECF No. 56-6. Moreover, NPAS did not audit patient accounts it received from the hospital to ensure that the patient accounts were not in default. Steadmon Dep. 8, ECF No. 56-1. Given this evidence, there is a genuine dispute of material fact regarding whether NPAS may claim the protections of the bona fide error defense, and summary judgment on Fausz's remaining claim is inappropriate at this time.

IV. NPAS's Motion for a Hearing and Oral Argument on the Issues

NPAS also moved for a hearing and oral argument on its motion for summary judgment, Mot. Hr'g, ECF No. 55. Fausz did not object. Resp. Mot. Hr'g, ECF No. 57. The Court finds that a hearing and oral argument on the issues are unnecessary. Thus, in the interest of conserving judicial resources, the Court will deny NPAS's motion for a hearing and oral argument.

V. Conclusion

The Court will grant in part NPAS's motion for summary judgment on Count I. The Court will deny NPAS's motion for summary judgment on Count II. The Court will also deny NPAS's motion for a hearing and oral argument on the issues discussed in the motion for summary judgment. The matter will be referred to the magistrate judge for scheduling. An order will be entered in accordance with this memorandum opinion.

February 21, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**

18